**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| PEDRO VERA DENIS, Petitioner, | ) | |
| vs. | ) | Civil Action No. 3:26-cv-01433<br>Judge Stephanie L. Haines |
| LEONARD ODDO, *et al.*, Respondents. | ) | |

**MEMORANDUM OPINION**

Pedro Vera Denis ("Petitioner") is an immigration detainee currently held at the Moshannon Valley Processing Center ("MVPC") in Phillipsburg, Pennsylvania. Petitioner filed an Amended Petition for Writ of Habeas Corpus ("Petition"), challenging his detention as unreasonably prolonged because his removal is not significantly likely in the foreseeable future. ECF No. 9. For the reasons that follow, the Petition will be **GRANTED.**

## I. BACKGROUND

Petitioner is a native and citizen of Cuba. ECF No. 9, ¶ 19. He entered the United States sometime in 1995. *Id.* On July 2, 2025, Petitioner was detained by Immigration and Customs Enforcement ("ICE") upon release from the Berks County Correction Center after completing a 108-day sentence for an unspecified misdemeanor crime. *Id.* at ¶¶ 2, 19. On September 4, 2025, an immigration judge ("IJ") ordered Petitioner removed from the United States.[1] ECF No. 9-2, p. 2. The removal order became administratively final on October 6, 2025, upon expiration of the

[1] ICE's July 13, 2026 Notice of Failure to Comply incorrectly states that an IJ ordered Petitioner removed on November 18, 2025. ECF No. 7-2, p. 2. That date, however, corresponds to the dismissal of Petitioner's untimely appeal, not the date he was ordered removed. *See* ECF No. 9-2, p. 2.

period for filing an appeal. *Id.* On December 3, 2025, ICE issued a notice of removal stating that it intended to remove Petitioner to Mexico.[2] ECF No. 7-1, p. 2. On May 14, 2026, Petitioner was moved to the Port Isabel Detention Center in Texas. ECF No. 9, ¶ 21. On May 22, 2026, ICE's planned removal of Petitioner to Mexico was unsuccessful. ECF No. 7, p. 1. Petitioner was subsequently transferred to a detention center in Louisiana before being returned to MVPC. ECF No. 9, ¶ 22. On July 13, 2026, ICE issued Petitioner a Notice of Failure to Comply, which cited the May 22 incident and advised him that the removal period had been extended pursuant to 8 U.S.C. § 1231(a)(1)(C). ECF No. 7-2, p. 2.

On July 24, 2026, Petitioner filed a Petition for Writ of Habeas Corpus, Respondents opposed, Petitioner amended his petition and filed a reply along with two notices of supplemental authority. ECF Nos. 1, 7-12. The matter has been fully briefed and is ready for disposition.

## II. DISCUSSION

Petitioner principally argues that his removal is not significantly likely to occur in the reasonably foreseeable future and that his continued detention therefore exceeds the period reasonably necessary to effectuate his removal under *Zadvydas v. Davis*, 533 U.S. 678 (2001). ECF No. 9, ¶¶ 27-35, 39; ECF Nos. 8, 10. He also contends that pending litigation in *D.V.D. v. United States Dep't of Homeland Sec.*, 778 F. Supp. 3d 355 (D. Mass. 2025), of which he is a class member, further diminishes the likelihood of his removal. ECF No. 9, ¶ 37; ECF No. 8, pp. 5-6; ECF No. 10, pp. 4-5.

Respondents do not dispute that Petitioner has remained detained beyond the six-month period recognized in *Zadvydas*. They argue, however, that his continued detention is lawful

---

[2] Although the notice identifies Petitioner, the accompanying certificate of service identifies a different individual, "Roque Silva, Luis Rodolfo," as the person served. ECF No. 7-1, p. 2. The Court need not resolve this discrepancy because it relies on the notice only as evidence of ICE's stated intention to remove Petitioner to Mexico, rather than as proof that the notice was properly served.

because he obstructed the execution of his removal order by failing "to exit [his] pod for removal to Mexico." ECF No. 7, pp. 2-6.

**A. The *D.V.D.* litigation.**

Petitioner argues that the *D.V.D.* litigation challenging the Government's third-country removal practices makes his removal to Mexico less likely. ECF No. 9, ¶ 37; ECF No. 8, pp. 5-6; ECF No. 10, pp. 4-5. To the extent Petitioner contends that the litigation presently prevents his removal, that argument is unpersuasive. On September 29, 2026, the Supreme Court stayed the February 25, 2026 judgment entered in that action and granted certiorari. *Dep't of Homeland Sec. v. D.V.D.*, No. 26-426, 26A406, 2026 WL 2917860, at *1 (U.S. Sep. 29, 2026). Petitioner identifies no other development in that litigation establishing that his removal to Mexico is unlikely to occur. Accordingly, the *D.V.D.* litigation, standing alone, does not establish that Petitioner's removal is unlikely in the reasonably foreseeable future.

**B. Petitioner's continued detention under Section 1231.**

Under federal law, when a removal order becomes final, ICE has 90 days in which to remove a noncitizen from the United States and must detain the noncitizen during this period. *See* 8 U.S.C. §§ 1231(a)(1), (a)(2)(A). After this period expires, however, continued detention is authorized only for so long as "removal is . . . reasonably foreseeable." *Zadvydas*, 533 U.S. at 699. Because "[i]ndefinite, [or] permanent, detention" would raise serious constitutional concerns, *Zadvydas* construed detention beyond the 90-day period as authorized only for so long as reasonably necessary to accomplish removal, and recognized six months as a presumptively reasonable period. *Id.* at 700-701. "This 6-month presumption, of course, does not mean that every [noncitizen] not removed must be released after six months." *Id.* at 701. To obtain release, the noncitizen bears the initial burden to provide good reason to believe there is no significant

likelihood of removal in the reasonably foreseeable future. *Id.* If they make that showing, "the Government must respond with evidence sufficient to rebut that showing." *Id.* And as the period of post-removal detention grows, what counts as the "'reasonably foreseeable future' conversely . . . shrink[s]." *Id.*

The removal period, however, "shall be extended . . . if the [noncitizen] . . . conspires or acts to prevent the [noncitizen's] removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C). Thus, a noncitizen whose conduct prevents removal cannot rely upon the resulting delay to establish entitlement to release under *Zadvydas*. *See Roe v. Oddo*, No. 3:25-cv-128, 2025 WL 3030692, at *8 n.9 (W.D. Pa. Oct. 30, 2025); *see also Sotero v. Garland*, No. 3:23-cv-0004, 2023 WL 12068902, at *2 (W.D. Pa. June 12, 2023). That said, a finding that a noncitizen prevented removal must rest on evidence establishing a causal connection between the noncitizen's conduct and the failure to execute the removal order.

Respondents represent that ICE arranged to remove Petitioner to Mexico on May 22, 2026, but he frustrated those arrangements by refusing to leave his detention pod. ECF No. 7, p. 1. In support, Respondents submit only a July 13, 2026 Notice of Failure to Comply, which states that Petitioner refused to leave his pod for removal to Mexico and that his removal period was therefore extended under Section 1231(a)(1)(C). ECF No. 7-2, p. 2. Although the circumstances differ somewhat, the Court finds instructive Chief Judge Bissoon's reasoning in *Alvarez v. United States Immigr. & Customs Enf't*, No. 3:26-cv-01400, 2026 WL 3023671 (W.D. Pa. Oct. 8, 2026). There, in a sworn declaration, an ICE officer asserted that a Cuban national detainee was transported from MVPC to Texas and ultimately to the Hidalgo Port of Entry at the Mexican border, where he refused to depart the United States, thereby preventing his removal. *Id.* at *2. The court rejected the Government's obstruction argument because the evidence failed to establish that the detainee

had taken any action that actually prevented an otherwise executable removal. *Id.* at *2 & n.3. The court further observed that the Government had not demonstrated that Mexico agreed to accept the petitioner or that ICE possessed a concrete plan for completing his removal. *See id.* at *3.

Here, Respondents offer even less evidentiary support for their claim of obstruction than the Government offered in *Alvarez*. For example, unlike *Alvarez*, the record contains no sworn declaration describing the removal arrangements or explaining how Petitioner's conduct prevented removal. Instead, Respondents rely solely on a Notice of Failure to Comply that, while identifying certain steps ICE took toward removing him to Mexico, provides no factual explanation connecting the alleged refusal to the failure to execute removal, beyond stating that he refused to leave his pod. The record also does not establish that Mexico was prepared to receive Petitioner or that ICE otherwise possessed an executable plan for his removal.

Petitioner has now been detained for more than a year under a final order of removal. ICE's attempted removal in May 2026 was unsuccessful and Petitioner remains detained. Given the lack of evidence connecting his conduct to the failure to execute his removal, along with the lack of evidence that Mexico has agreed to receive him or that arrangements for his removal are otherwise capable of completion, the Court finds that good reason exists to believe that his removal is not significantly likely in the reasonably foreseeable future. The burden therefore shifts to Respondents to rebut that showing with sufficient evidence. *Zadvydas*, 533 U.S. at 701. Respondents rely primarily on Petitioner's alleged obstruction of the May 22 removal attempt but, as explained above, offer insufficient evidence to establish that Petitioner's conduct prevented an otherwise executable removal. Thus, Respondents have failed to rebut Petitioner's showing. Accordingly, Petitioner's continued detention is no longer authorized under Section 1231, as construed in *Zadvydas*.

## III. CONCLUSION

For the reasons set forth herein, the Petition will be **GRANTED**. An appropriate Order follows.

**ORDER**

**AND NOW**, this 20th day of November, 2026, for the reasons stated in the Memorandum Opinion, it is hereby **ORDERED** that:

1. The Amended Petition for Writ of Habeas Corpus, ECF No. 9, is **GRANTED** to the extent it seeks Petitioner's release from ICE detention.
2. Respondents shall immediately release Petitioner from ICE detention.
3. Nothing in this Order prevents Respondents from imposing lawful conditions of supervision consistent with the Immigration and Nationality Act and applicable regulations.
4. Respondents shall file a notice certifying compliance with this Order within seven days.
5. With no further action required by the Court at this time, the Clerk of Court shall mark this matter closed.

Stephanie L. Haines
United States District Judge